**UNITED STATES of America,**

v.

**Alfred ELI, Defendant.**

**No. CR97-0292(PLF)(JMF).**

United States District Court, District of Columbia.

Sept. 25, 1997.

John Finnegan, United States Atty's Office, Washington, DC, for United States.

David Howard, Federal Public Defender's Office, Washington, DC, for Alfred Eli.

## DETENTION MEMORANDUM

FACCIOLA, United States Magistrate Judge.

This matter comes before me upon the application of the United States that the defendant be detained pending trial. After a hearing, the government's motion was granted, and this memorandum is submitted to comply with the statutory obligation that "the judicial officer shall—include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### FINDINGS OF FACT

An indictment was returned charging the defendant in three counts with the sale of a controlled substance, i.e. crack cocaine. At the hearing, government proffered that, on March 6, 1997 the defendant sold 61.8 grams of cocaine to a confidential informant for $1,550. He then sold 62 grams of crack to the same confidential informant on March 13, 1997 for the same price. Finally, on April 2, 1997 he sold roughly twice that amount, 125.4 grams to the same informant for $3,000. The government also proffered that all of these transactions were recorded on audio and video tape.

### REASONS FOR DETENTION

An examination of the factors required to be considered by 18 U.S.C. § 3142(g) com-

pels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure the safety of the community and his detention is therefore appropriate. Additionally, there is a substantial risk of flight.

**The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.** The offenses charges involve a narcotic drug and discloses a willingness to sell drugs in substantial quantities. The Bail Reform Act creates a presumption that when, as is true here, the violation of the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) charged is punishable by a maximum term of imprisonment of 10 years or more "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Indeed, given that each sale was of an amount greater than 50 grams, defendant faces a potential 10 year mandatory minimum on each count. That the defendant may be facing no less than 30 years in prison certainly provides him with a powerful motive to flee.

**Defendant's family ties, employment, financial resources, and length of residence in the community.** Defendant has worked as a laborer but advised the Pre-trial Services Agency that he has not worked for the past 6 months due to a physical condition. Defendant lives with his sisters in the Southeast part of the city.

**Defendant's character, physical and mental condition, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings.** Defendant has three prior convictions. In 1983 he was convicted in New York of criminal possession of a weapon. In 1991 he was convicted of "bad check" in Virginia and sentenced to probation. In 1993 he was convicted in the Superior Court of possession of cocaine and was placed on probation. Finally, in 1985 he was arrested for possession of marijuana in Massachusetts and failed to appear when ordered to do so. There is still a warrant outstanding for his arrest.

While defendant has apparently successfully completed probation, his conviction history, particularly the conviction for a drug offense, weighs in favor of detention. Moreover, his failure to appear when required must count against him.

**The weight of the evidence.** The weight of the evidence appears very strong. The number of sales to the same person will probably eliminate any question of identification and the audio or video taping of the transactions will be highly probative of guilt.

**The seriousness of the danger to the community if released.** Application of this factor must be done in the context of what the Bail Reform Act attempted to accomplish by making the consideration of dangerousness explicit when release conditions are considered—to assess the likelihood that the defendant will commit additional crimes when released. In the context of narcotics trafficking, that would mean an assessment of the likelihood that defendant will continue to deal drugs while on release. There is a substantial risk that this will occur.

The most startling aspect of this case is the substantial amounts of drugs sold. Like any other commodity, crack can only be sold by a dealer when that dealer in turn secures it from a manufacturer, wholesaler or importer. If the defendant was in business independently of any other organization, he would have had to purchase those drugs so that he could sell them to someone else. But, even if defendant's markup was 50% he would have had to come up with at least $3,000 to purchase the drugs he resold. The question then becomes how did an unemployed laborer do that? The only realistic answer is that he had sufficient capital from his drug dealing business to purchase the drugs he resold. If he had that much capital, he must have been heavily involved in drug trafficking.

On the other hand, perhaps the defendant was part of a drug trafficking operation working either on commission or consignment. While doing so would not require a capital outlay, it would mean that he was sufficiently involved in a substantial drug

operation to be trusted by his superiors with the substantial quantity of drugs he resold.

Thus, whether he was independent or working for someone else, he was certainly at the mid-level, wholesale level rather than at retail, street level. His involvement at that level where the profits (and risks) are greater leads to the inevitable conclusion that there is a most serious risk that he will resume drug trafficking if released, particularly in the absence of any other income from a legitimate source.

## CONCLUSION

Therefore, a weighing of all the pertinent facts compels the conclusion that the defendant should be detained pending trial. The government's case is strong and defendant has a criminal history which includes one failure to appear in court when required. Defendant is not working at present. The severe penalties he faces if convicted create a substantial risk of flight. The level of defendant's drug dealing compels the conclusion of a level of profitable involvement that creates an intolerable risk that defendant will resume drug dealing if released. Against all of this, defendant has offered little. He has failed to rebut the presumption the Bail Reform Act creates that there are no conditions, short of detention, that will protect the community from the danger he will resume selling drugs if released and the risk of flight. Given the substantial level of his drug dealing the alternative he proposes—confinement in a halfway house—does not reduce the risk that he will resume drug dealing to a level that is acceptable.